## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### STATHAM v. BLACKFORD, SUP'T, ET ALS.

#### March 23d, 1893.

1. MANDAMUS—*Lunatic—Discharge.*—Where a lunatic, who has been confined in an asylum, is released temporarily for her improvement, and after such release completely recovers, *mandamus* will lie against the superintendent of such asylum to grant her a certificate of discharge without her return to the asylum for examination.
2. IDEM—*Jurisdiction.*—Where the superintendent claims the right to retake the lunatic, and it is at the home of herself and all the parties that the apprehended act will be done—

HELD:

   That *mandamus* proceedings for her discharge are properly commenced in the court at the place of her home.

Appeal from decree of circuit court of city of Lynchburg, rendered November 25th, 1892, upon the petition of Maria B. Statham for a peremptory writ of *mandamus* against Benjamin Blackford, superintendent of the Western Lunatic Asylum, and others. From an order denying the writ, petitioner appeals. Opinion states the case.

*E. S. Brown* and *Staples & Munford*, for appellant.

*Kirkpatrick & Blackford*, for appellees.

LACY, J., delivered the opinion of the court.

The petition of Mrs. Maria V. Statham was filed in the circuit court of Lynchburg, asking for a peremptory writ of *mandamus* against Dr. Benjamin Blackford, superintendent

of the Western Lunatic Asylum; Allen W. Talley, committee of Maria V. Statham; William W. Statham, and Mary Statham, seeking to have a discharge from the asylum, and a certificate of the same, as provided in section 1688 of the Code of Virginia.

The case is, briefly, as follows : The petitioner is an old lady, sixty-seven years old ; is a widow, and a person of considerable property in the city of her residence. She has four children—Thomas R. Statham, with whom she resides in the city of Lynchburg ; William W. Statham, who resides in Appomattox county ; Elizabeth Morris, who resides with her husband in Duluth, Minnesota, and Mary Statham, who resides in Duluth also. Her husband died on the 31st day of May, 1889. In four or five days after her husband's death she was persuaded by her son William and her daughter Mary to go to Appomattox for her health, and she consented, as her health had been poor, intending to make a visit only. After being there a short time she expressed her desire to return to her home in Lynchburg, but William and Mary detained her on one pretext or another until August following, when they went to the county court of that county, and, without her knowledge, and without notice to her, or giving her any opportunity to defend herself, obtained an order of the court adjudging her insane, and appointing Allen W. Talley her committee, and divesting her of all of her estate. The said William and Mary kept her in Appomattox, under restraint, until the following year (1890), when they obtained an order from the justices of that county, committing her to the Western Lunatic Asylum, without notice to her, and without her being seen by the justices ; and they immediately carried her to said asylum, without her having any knowledge of her destination until she was incarcerated in the said asylum. In the following year, under requirement of the board of directors of the said asylum, she was granted a furlough, and sent

to Lynchburg in charge of Miss Beard, one of the attendants of the said asylum. Until July 11th, 1892, she remained in the house of her son, under the care of this person, who then left, and since then she has resided with her son without any incidents to indicate any unsoundness of mind of any sort, and that she is perfectly sane. That she has applied to Dr. Blackford, whose residence before his appointment as superintendent was in Lynchburg, for her discharge; that he has visited Lynchburg several times since she came from the asylum, and efforts have been unsuccessfully made to obtain interviews between him and her when he was in the city of their common residence, that he might, from personal observation and examination, be convinced of her sanity, *but he refused to see her, and says he holds her under the jurisdiction of the asylum at the request of her son, William W. Statham, and her daughters, Mary Statham, Mrs. Morris, and her committee, Mr. Talley,* and that he is informed that she has " paroxysms of recurrent mania." . That her said husband, by his will, disposed of a good deal of her property, discriminating in his will against her son Thomas, and in favor of said William and Mary, and that the said William and Mary had some reason to think that she, by her will, would make up the inequality to Thomas, and might renounce her husband's will; hence their conduct in taking her from home to another county, and having her deprived of her liberty and control of her property there, without notice to her, and without her having an opportunity to be heard in her defense. She prayed that a *mandamus* be granted to her, and the said parties defendant be required to show cause, if any they can, against her said prayer; that the question of her sanity might be properly tried by the court, and a jury impanelled, if necessary, to try the question of her sanity.

. To this petition Dr. Blackford demurred, and answered that he was instructed by the board of directors not to resist her

discharge; which answer was subsequently withdrawn. The committee demurred, and answered that he believed she was incapable of managing her estate, whether she be at this time continuously insane or not. The said William and Mary Statham demurred to the said petition. The circuit court sustained the demurrers, and dismissed the petition; from which order of the said circuit court of Lynchburg the plaintiff applied for and obtained a writ of error to this court.

Before the case came on to be heard the petitioner had taken certain depositions, without exceptions, and the said witnesses had been cross-examined by the counsel for the defendants; but the circuit court heard the case and decided it on the demurrers only. One of these is Dr. Walker's, the family physician of Mrs. Statham, and who has been practicing his profession for forty-three years, who has had considerable experience with persons of unsound mind, and who has had the professional charge as a doctor of Mrs. Statham since August, 1891, with the approval of Dr. Blackford, who directed Miss Beard to report to Dr. Walker while in charge of Mrs. Statham, which she did. Dr. Walker has seen Mrs. Statham constantly, and lives within a square of her, and whose bill had been paid, by order of Dr. Blackford, by the trustee, Talley, as he terms him. He says when he first saw Mrs. Statham (August, 1891,) she was sick with some gastric trouble, though not of serious character. He learned from her about her connection with the asylum, and was asked by her son and the family to look out for and treat whatever was wrong about her, mentally and physically, when necessary. He says that he has been sent for frequently to see Mrs. Statham, and treat her for some physical disability— never serious; that on these occasions, and at other times, he has kept her mental status under close inquiry, observation, and scrutiny, *and has never on any occasion found any mental aberration or disability.* The nurse reported to him that

Mrs. Statham was more nervous and restless, and he went to see her, and closely observed her, and there was no foundation for this statement whatever. On another occasion the nurse said he had better see Mrs. Statham that day, and he went three times that day, and did not let the family nor Mrs. Statham know why he came, and he found her free from excitement or any illusion whatever. With the exception of these unfounded apprehensions of this asylum nurse, he had never heard—from neighbors, visitors, or any other way—that Mrs. Statham was of unsound mind. After the closest scrutiny on many occasions (to sum up his testimony), he found nothing whatever wrong with this lady. If she was ever insane, she is, according to his testimony, now perfectly sane.

Dr. Terrell, after the closest scrutiny, and going into all details, sums up: "My opinion is, decidedly, that Mrs. Statham is a sane woman now."

Dr. Clark, an eminent physician, who, during six years' service in the legislature, was accustomed to the examination of asylums, and often visited them all in the discharge of his official duties, and was possessed of large means of knowledge of the characteristics of the same, goes over the same ground in detail, and he sums up as follows : " Whatever may have been Mrs. Statham's condition heretofore, *I consider her now perfectly sane.*"

Dr. Patterson says: *"At the present time she is sane. To me she has always presented a uniform condition of sanity."*

There are others of like effect, but we have cited enough ; and to this there is nothing *per contra*—not a word or a line—except the suggestion that she may become insane, by the superintendent, who has not seen her for nineteen months, and when he did then see her she was in such condition of sound mental condition as to be released from the asylum on furlough.

So, referring to what has gone before, we are justified in saying that Mrs. Statham is a perfectly sane person. Indeed, her sanity was distinctly admitted at this bar by the distinguished counsel who appeared here in behalf of William and Mary to resist the release of their mother, and, as was stated subsequently, to maintain the dignity and usefulness of the asylum. Then if, first, Mrs. Statham is sane, and confessedly so, and, secondly, is not in actual, if in constructive, custody, ought she, if entitled to her freedom, to be remanded to the asylum to be examined and discharged? Ought the rules of the asylum to so require; and, if they do so require, ought they to be so enforced in this case? Insane asylums are for the care and custody of the insane. There is no lawful place in them for the sane man. If, in such a case as this, an improving patient has been released temporarily for her improvement, and she has gone on to improve, as is conceded, and as is, moreover, distinctly proven in this case, until she is blessed by a complete recovery and a perfect restoration to health, ought this delicate lady, nearly threescore and ten years old, to be released entirely, or should she be carried back, against her will withal, to the lunatic asylum, before her just status can be recognized? We think, if she is sane, she is entitled to her freedom. She can only be held upon the ground that she is insane. If she is not a lunatic, then the lunatic asylum is no place for her. It was not established for any such purpose.

But technical questions are here raised as to the proceedings, and the form of the proceedings. In a case like this the court ought not to lend a ready ear to anything but the very right of the case.

The first question is that the court is without jurisdiction; but the petition alleges that all the parties reside in Lynchburg, which is the home of them all, and such objection to the jurisdiction can only be taken by plea in abatement, which

cannot be received after the defendant has demurred. And the objection is here raised by demurrer, which admits the truth of the allegations of the petition; so that by the pleadings it is admitted that Mrs. Statham is sane, and is only detained in custody because her children, William and Mary, and the committee wish it. This is no reason at all; no cause whatever. If she is not insane, she cannot be lawfully detained in control of the asylum, and is entitled to her discharge.

But it is further urged that the proper remedy is by *habeas corpus;* but it is doubtful whether that writ would lie in a case where there is no actual custody of the person; and, where the defendant could not, without a taking, produce the body, such would seem to be a perversion of the writ.

Mrs. Statham was in Lynchburg, and the asylum claimed the right, by force, to re-take her, and bring her, by force, to the asylum, for examination and treatment, if needed. Her committee was there, and was objecting to her release. That was the place where the apprehended act was to be done, if done, and the proceeding had. The home of the superintendent is in Lynchburg, except that he temporarily sojourns in Staunton, in charge of the asylum.

The depositions were taken without objection; and, if the case had not been decided on demurrer, the testimony could all have been adduced, if required, in oral examinations of witnesses; but, as the taking of the same was not objected to, and the witnesses were cross-examined by the defendants, objection was waived as to them, and we think justice requires that this sane woman shall be discharged, and a proper certificate given her. If, as is apprehended, she shall have a recurrence of the supposed mania in her case—if, in other words, though now sane, she should become insane—it will be time enough for her to be sent to the asylum then.

As to the rule which issued against the superintendent to

show cause why he should not be fined and attached for con-
tempt of this court in attempting to assert his control over
the petitioner after these proceedings were commenced, that
should be discharged. The disclaimer of the superintendent
and the circumstances show there was never any intention on
his part, nor on the part of the authorities of the asylum, to
disregard the mandate of the court. Indeed, we feel assured
that neither the superintendent nor the president of the board
of directors feel the slightest desire to hold any control over
this petitioner beyond what the law requires.

We are of opinion that the peremptory writ of *mandamus*
should issue as prayed for, and we are therefore of opinion to
reverse and annul the order of the circuit court appealed
from here, and that this court should render such order as the
circuit court ought to have rendered, which is to issue the
writ in accordance with the petition.

LEWIS, P., (dissenting) said :

In this case I dissent from the opinion of the court. Aside
from any other question in the case, it is clear that the court
below was without jurisdiction. This objection was raised
both by the demurrer and answer in that court, and ought, I
think, to be sustained. Section 3218 of the Code is express
that "jurisdiction of writs of *mandamus* * * * shall be
in the circuit court of the county, or in the circuit or corpora-
tion court of the corporation, wherein the record *or proceed-
ing* is to which the writ relates."

The proceeding in the present case to which the writ relates
is the discharge of the petitioner and the granting of a cer-
tificate of discharge from the Western Lunatic Asylum, which
institution is not in Lynchburg, but in Staunton, as is the
superintendent, and consequently *the proceeding* in question
is there also ; for, although the petitioner is on furlough, she

is, in contemplation of law, for the purposes of the present case, as much in the asylum, from which she seeks a discharge under section 1688 of the Code, as though she were, in point of fact, closely confined therein. So that, if *mandamus* is the proper remedy in a case like this (which I deny), the application for the writ was addressed to the wrong forum.

Upon the question of jurisdiction, see *Beckley* v. *Palmer*, 11 Gratt. 625, and *N. & W. R. R. Co.* v. *Postal Telegraph-Cable Co.*, 88 Va. 932.

Undoubtedly a lunatic asylum is not the proper place for the confinement of sane persons, but at the same time it is of the utmost importance that the plain provisions of the law in regard to the jurisdiction of the courts of the state should not be ignored or disregarded.

RICHARDSON, J., concurred in the opinion of LEWIS, P.

ORDER REVERSED.